**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-21533-CIV-ALTONAGA**

**JULIO CESAR GARCIA-MACHUAT**,

      Petitioner,

v.

**GARRETT RIPA**, *et al.*,

      Respondents.[1]

_____/

**<u>ORDER</u>**

**THIS CAUSE** came before the Court on Petitioner, Julio Cesar Garcia-Machuat's Second

Amended Verified Petition for Writ of Habeas Corpus [ECF No. 6].  Petitioner challenges his

detention at the Broward Transitional Center in Pompano Beach, Florida.  (*See generally id.*).

Respondent filed a Response [ECF No. 8]; to which Petitioner filed a Reply [ECF No. 10].  The

Court has reviewed the record, the parties' written submissions, and applicable law.

**I.  BACKGROUND**

Petitioner is a Cuban citizen who entered the United States on February 14, 2022.  (*See*

Pet. ¶ 38).  Later that day, U.S. Customs and Border Protection "determined that Petitioner entered

the United States without being admitted or paroled after inspection by an immigration officer."

(Resp. 2).[2]  On February 17, 2022, Petitioner was given a Notice to Appear ("NTA"), charging

---

[1] Petitioner names several Respondents, including Garrett Ripa, the Miami Immigration and Customs Enforcement Field Office Director; the Warden of the Broward Transitional Center; the U.S. Department of Homeland Security; and Immigration and Customs Enforcement.  (*See* Pet. ¶¶ 25–28).  According to Respondents, the only proper party is the Warden of the Broward Transitional Center.  (*See* Resp. 1 n.1; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) (reaffirming that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent").  Petitioner does not contest that assertion.  (*See generally* Dkt.).  Thus, the Court refers to Respondent in the singular.

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

him as inadmissible.  (*See id.*; *see also generally id.*, Ex. 1, Feb. 17, 2022 NTA [ECF No. 8-1]).

Petitioner was released on his own recognizance on February 22, 2022.  (*See* Resp. 2).

On September 8, 2022, Petitioner filed a Form I-589 application for asylum with U.S. Citizenship and Immigration Services.  (*See* Pet. ¶ 5; *see also id.*, Ex. 3, Receipt of I-589 Application [ECF No. 6-3]).  On June 9, 2025, Petitioner attended an immigration hearing in Orlando, Florida.  (*See* Pet. ¶ 7).  There, an Immigration Judge ("IJ") granted the Government's motion to dismiss and "dismissed immigration proceedings against Petitioner."  (Resp. 2; *see also generally id.*, Ex. 4, Order on Mot. to Dismiss [ECF No. 8-4]).  Shortly thereafter, Petitioner was encountered and later detained by U.S. Immigration and Customs Enforcement ("ICE").  (*See* Resp. 2).

On June 17, 2025, ICE issued Petitioner a Notice and Order of Expedited Removal under 8 U.S.C. section 1225(b)(1), placing Petitioner in expedited removal proceedings.  (*See id.* 3 (alterations added); *see also generally id.*, Ex. 7, Notice and Order of Expedited Removal [ECF No. 8-7]).  Petitioner expressed a fear of persecution and "was put through a grueling three-hour credible fear hearing" on July 17, 2025.  (Reply 2).  According to Petitioner, the Government determined his fear was credible.  (*See* Pet'r's Suppl. Mem. of Law [ECF No. 12] 2).  On July 19, 2025, "Petitioner was issued a new NTA[,]" vacating his expedited removal order and charging him as inadmissible under 8 U.S.C. sections 1182(a)(6)(A)(i) and (7)(A)(i)(I).  (Resp. 3 (alteration added); *see also generally id.*, Ex. 8, July 19, 2025 NTA [ECF No. 8-8]).

Petitioner requested a custody redetermination hearing, but an IJ denied his request on August 15, 2025 for lack of jurisdiction.  (*See* Resp. 3).  On November 20, 2025, an IJ found Petitioner removable and ordered Petitioner removed to Cuba.  (*See id.*; *see also generally id.*, Ex. 11, Order of the IJ [ECF No. 8-11]).  Petitioner appealed the decision on December 1, 2025, and

his appeal is pending before the Board of Immigration Appeals.  (*See* Resp. 3–4; *see also generally id.*, Ex. 12 Filing Receipt for Appeal or Mot. [ECF No. 8-12]).

On March 16, 2026, Petitioner filed his Petition, asserting two claims for relief.  (*See generally* Pet.).  In Count I, Petitioner challenges his detention, suggesting it is properly governed by section 1226(a), and that by denying Petitioner a bond hearing under section 1226(a), Respondent violates Petitioner's rights under the Immigration and Nationality Act ("INA").  (*See id.* ¶ 79).  In Count II, Petitioner makes several allegations, including that his June 2025 arrest was a violation of his bond regulations, and that his continued detention without a bond redetermination hearing violates his right to due process.  (*See id.* ¶ 107; *see also id.* ¶¶ 87–89).

According to Respondent, the Court lacks jurisdiction to consider Petitioner's claims (*see* Resp. 4–9), Petitioner is subject to mandatory detention under section 1225(b)(1)(B)(ii) (*see id.* 9–11), and Petitioner's detention does not violate due process  (*see id.* 11–12).

## II.  LEGAL STANDARD

District courts have the authority to grant petitions for writs of habeas corpus.  *See* 28 U.S.C. § 2241(a).  Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted).  A writ may issue to a petitioner who demonstrates he is detained in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The Court's habeas jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.  DISCUSSION

**Count I.**  Respondent contends that because Petitioner is detained under 8 U.S.C. section 1225(b)(1), the Court lacks subject matter jurisdiction because of the jurisdiction-stripping provision set forth in section 1252(a)(2)(A).  (*See* Resp. 4–9).  Specifically, Respondent asserts

that section 1252(a)(2)(A) divests the Court of jurisdiction to review claims or challenges pertaining to expedited removal proceedings under section 1225(b)(1).  (*See id.* 6–9); *see also* 8 U.S.C. § 1252(a)(2)(A)(i)–(iv).  Respondent's argument is persuasive.

Under section 1225(b)(1), "[i]f an immigration officer determines that an alien . . . is inadmissible . . . , the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."  8 U.S.C. § 1225(b)(1)(A)(i) (alterations added).  If the alien indicates an intention to apply for asylum, an immigration officer "shall refer the alien for an interview by an asylum officer[.]"  *Id.* § 1225(b)(1)(A)(ii) (alteration added).  And if the officer determines that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum."  *Id.* § 1225(b)(1)(B)(ii).

Section 1252(a), in turn, contains a jurisdiction-stripping provision applicable to immigration actions arising under section 1225(b)(1).  *See id.* § 1252(a)(2).  Section 1252(a)(2) reads:

> (2) MATTERS NOT SUBJECT TO JUDICIAL REVIEW
>
> (A) Review relating to section 1225(b)(1)
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review [—]
>
> (i) except as provided in [section 1252(e)], any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,
>
> (ii) except as provided in [section 1252(e)], a decision by the Attorney General to invoke the provisions of such section,
>
> (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

(iv) except as provided in [section 1252(e)], procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

*Id.* § 1252(a)(2)(A)(i)–(iv) (alterations added).

Additionally, under section 1252(a), federal courts of appeals provide the exclusive forum through which petitioners may seek review of expedited removal orders. *See id.* § 1252(a)(2)(D) ("Nothing in . . . this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." (alteration added)); *id.* § 1252(a)(5) ("Notwithstanding any other provision of law . . . including [28 U.S.C.] section 2241 . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an [expedited] order of removal[.]" (alterations added)).

Congress carved out a narrow exception — in section 1252(e), permitting district courts to conduct limited habeas corpus review of expedited removal orders under specified circumstances. *See id.* § 1252(e)(2). The review permitted under section 1252(e) is confined to three tightly circumscribed factual questions: (1) whether the petitioner is an alien; (2) whether the petitioner was in fact ordered removed under section 1225(b)(1); and (3) whether the petitioner can prove he is a lawful permanent resident, was admitted as a refugee, or was granted asylum. *See id.* § 1225(e)(2)(A)–(C). Outside the narrow window of review permitted by section 1252(e)(2), district courts may not review challenges relating to the implementation or operation of expedited orders of removal, the Government's decision to place an individual in expedited removal, or the applicability of section 1225(b)(1) to individual aliens. *See id.* § 1252(a)(2)(A)(i)–(iii). And courts may not "enter declaratory, injunctive, or other equitable relief" with respect to such orders. *Id.* § 1252(e)(1)(A).

The parties agree that once Petitioner established a credible fear of persecution and was issued a new NTA on July 19, 2025, he was no longer in expedited removal proceedings. (*See* Pet'r's Suppl. Mem. of Law 1 ("Petitioner is no longer in expedited removal."); Resp't's Suppl. Mem. of Law [ECF No. 13] 1 ("Petitioner is not presently in expedited removal proceedings[.]" (alteration added)). But Petitioner's continued detention arises from the June 17, 2025, expedited removal order which, according to Respondent, mandates that he remain detained. (*See* Respondent's Suppl. Mem. of Law 1 ("[T]he authority to detain [Petitioner] remains 8 U.S.C. [section] 1225(b)(1)[.]" (alterations added))). In Count I, Petitioner challenges his detention which both *arises from* and *relates to* his expedited removal order under section 1225(b)(1).[3]  *See* 8 U.S.C. § 1252(a)(2)(A)(i).    And Petitioner does not invoke any of the exceptions in section 1252(e).

Section 1252(a) therefore applies, and its statutory language is clear and unambiguous. *See United States v. Carrell*, 252 F.3d 1193, 1198 (11th Cir. 2001) ("In statutory construction, the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results." (citation and quotation marks omitted)).  That language deprives the Court of subject matter jurisdiction. *See Zamirov v. Olson*, No. 25-cv-6540, 2025 WL 2618030, at *2 (N.D. Ill. Aug. 29, 2025) ("[T]his court's review of [petitioner's] habeas petition is foreclosed by the plain language of the jurisdiction-stripping provisions of [section] 1252(a)(2)(A)(i) to the extent he seeks review of the expedited removal order." (alterations added)); *see also Pineda v. Customs & Border Prot.*, 544 F. App'x 925, 926 (11th Cir. 2013) (affirming district court's dismissal of habeas petition for lack of jurisdiction, holding the "INA bars judicial review of any claim arising from or relating to

---

[3] To the extent Petitioner also challenges the Government's decision to place him in expedited removal proceedings — which he mentions briefly for the first time in his most recent filing (*see* Pet'r's Suppl. Mem. of Law 2 ("Petitioner should never have been subjected to Expedited Removal[.]" (alteration added))) — the Court lacks jurisdiction to review such claim under section 1252(a)(2)(A)(ii).

the implementation or operation of an expedited removal order"). Count I is therefore dismissed without prejudice for lack of subject matter jurisdiction.[4]

*Count II.* In Count II, Petitioner alleges the Government violated his due process rights when it revoked his Order of Recognizance on June 9, 2025, detaining him without notice or an opportunity to be heard. (*See* Pet. ¶ 87; *see also* Reply 8–9).[5] Insofar as Petitioner challenges the Government's actions before the order of expedited removal, this claim is not barred by section 1252(a) and it is within the Court's jurisdiction. *See, e.g.*, *Hernandez v. Parra*, No. 26-21701-Civ, 2026 WL 1221818, at *3 (S.D. Fla. Apr. 3, 2026) (holding that review of whether ICE complied with agency regulations in revoking an order of supervision was within the court's jurisdiction).

Petitioner's argument misstates the course of events and is without merit. On June 9, 2025, after the Government moved to dismiss removal proceedings against Petitioner, an IJ granted its motion at an in-person immigration hearing. (*See* Pet. ¶ 7; Resp. 2). For that brief period, Petitioner was not in removal proceedings. And as a result, his Order of Recognizance was no longer in effect.

Contrary to Petitioner's allegations, the Government did not revoke the Order of Recognizance; an IJ dismissed Petitioner's removal proceedings — doing so at a contested

---

[4] Even if the Court had jurisdiction to review Petitioner's challenge, his detention is mandatory under the clear language of section 1225(b)(1)(B)(ii) — which is explicit in requiring that Petitioner "shall be detained for further consideration of the application for asylum." *Id.* Although Petitioner was technically placed in full removal proceedings after a positive credible fear determination, his asylum application remains under consideration. "Thus, Petitioner's detention continues to be governed by section 1225(b)(1), notwithstanding his case's transfer from expedited removal into [full removal] proceedings." *Rincon v. Hyde*, 810 F. Supp. 3d 101, 108 (D. Mass. 2025) (alteration added); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (holding section 1225(b)(1) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin" (alteration added)).

[5] Many of the allegations in Count II are mere restatements of those in Count I and thus do not warrant additional consideration. But Petitioner's claims regarding his June 9, 2025 detention "without notice or opportunity to be heard" (Pet. ¶ 87), do not appear in Count I and therefore are addressed.

hearing.  Petitioner's detention that followed shortly thereafter was related to the new, expedited removal proceedings that the Government initiated that same day, not his prior removal proceedings.

Petitioner cites *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 2604573 (S.D. Fla. Sept. 9, 2025), in support of his due process claim, but *Grigorian* is inapposite.  There, the petitioner was released on an order of supervision ("OSUP") in 2011.  *See id.* at *1–2.  Fourteen years later, ICE revoked Grigorian's OSUP and detained him.  *See id.* at *2.  At no time did the Government terminate Grigorian's removal proceedings.  *See generally id.*  Instead, ICE revoked Grigorian's OSUP and detained him in connection with his preexisting removal proceedings, failing to follow itsr own regulations in the process.  *See id.* at *2, 10.

Here, Petitioner's prior removal proceedings were terminated at his June 9, 2025, hearing; and he was detained under a separate authority in connection with new removal proceedings. Count II is therefore denied, as Petitioner fails to demonstrate how the Government's actions have in any way violated his due process rights.

### IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner, Julio Cesar Garcia-Machuat's Second Amended Verified Petition for Writ of Habeas Corpus **[ECF No. 6]** is **DISMISSED in part** and **DENIED in part**.  Count I is **DISMISSED without prejudice**.  Count II is **DENIED**.  The Clerk of Court is directed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 15th day of May, 2026.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

8